All rise. The Illinois County Court Third Division is now in session. The Honorable Justice LeRoy K. Martin is presiding. This is such a gentleman. It's over my chin. Please be seated. You will call the kicks, please. American National Property v. Charter Oak Fire Insurance Co. Good morning, everyone, both counsels and students who we see here today. We are pleased to have you here with us. I am LeRoy Martin and these are my colleagues, Justice Lamkin and Justice Reyes. And we are certainly pleased to have you all here today. And the lawyers are as well, because they really get excited when they have a crowd, as you can see. So the first thing, we're going to ask you to stick around, obviously, so that after it's all done, we have an opportunity to speak with you all. And I will just add this as an aside, that Justice Lamkin, she commented that I was such a gentleman. But I will tell you, when I was a lawyer practicing criminal law, she was a judge on the criminal courts. And so I learned then to be very polite to her on behalf of my clients. So this goes way back, many, many years ago before we were colleagues. With that, I will ask the lawyers for both the appellant and the athlete to identify themselves for the record. And gentlemen, let me also remind you that the proceedings are being recorded. So when you speak, speak into the microphone so that the recordings can pick it up. Thank you. Good morning. May it please the Court, my name is Michael Riesis, R-E-S-I-S. And I represent the appellants, Hamilton Partners and Charter Oak. I would like 12 minutes for my main argument, three minutes reserved for rebuttal and the cross-appeal. Very good. And so you anticipated my next question. Very good, counsel. Good morning, Your Honors. Christopher Wills on behalf of the Appellee and Cross-Appellant American National Property and Casualty Company. Thank you. And I will have the same breakdowns, Mike. Thank you very much. All right. Sir, you may begin. Good morning. May it please the Court. Morning. Counsel? This appeal involves a coverage dispute, which I just have to believe our audience will really get into as the argument develops. ANPAC, the Appellee and Charter Oak, issued three insurance policies that are relevant. ANPAC issued two of the policies, the umbrella policy to its named insured condenser people and an underlying $2 million primary policy listed on the umbrella policy declaration page. Hamilton Partners was made an additional insured on the $2 million ANPAC policy at its request for certain work that condenser people was doing at a building that Hamilton Partners managed. Charter Oak issued a third policy for $1 million to its named insured Hamilton Partners. Now, we submit that the Court erred in finding that ANPAC's coverage was excess for two reasons. First, Hamilton Partners targeted, tendered ANPAC and deselected the Charter Oak policy pursuant to John Burns. John Burns gave Hamilton Partners a paramount right to select which carrier would defend and indemnify when the policies did not provide true excess coverage. The right is so paramount that a targeted policy must respond even if it contains other insurance conditions that would otherwise make the policy excess. This allows... Say that again, counsel. I said this right is so paramount that a targeted policy must respond even if it contains other insurance conditions that would otherwise make that policy excess. Could I ask... Well, have you conceded the duty of cooperation, non-cooperation since you didn't bring it in your petition for re-hearing? Well, you ruled in our favor on the cooperation provision on the cross-appeal, so we had no basis to ask for a re-hearing on that. If anyone was going to ask for a re-hearing on that, it would have been opposing counsel, and he didn't.  Counsel, I was about to ask. Yes. If there is a targeted tender... Yes. Don't we first have to make the decision that the person who the tender is targeted to is in fact a primary? No, Your Honor. I don't believe that is correct. That's what I wanted to ask. Yes. And the reason for that is answered by John Burns itself, because in John Burns, the court said very clearly that an other insurance clause, quote, does not in itself overcome the insurance right to tender defense of a suit to one insurer alone, close quote. So what that is saying is that if you have two policies and they're at the same level, they're not true excess, they're at the same level, they could both be primary, they could both be excess, but as long as they're at the same level and without reference to the other insurance clause, the insured has this right to choose which policy should respond for defense and indemnity. I'm sorry. So I just want to be clear on what you're saying. Yes. If an insurer has said they're not primary, or we find that they're not a primary, and we find that the other insurance company is a primary, and you target the person who's not a primary, if you tender to that person, they have to take it. The first person who is not at all a primary. So to decide whether or not you have primary, I think where we're going with this, I think to your question is a policy can be excess by coincidence or it can be excess as a true excess policy. The umbrella policy issued by ANPAC is a true excess policy. It's not involved in this. I only mentioned it because that declaration page identifies the ANPAC primary policy. It doesn't matter if a painstaking analysis of the other insurance provisions might make ANPAC excess. They don't have a true excess policy. Their policy has no predetermined attachment point unlike an umbrella policy. It has a duty to defend any suit like a primary policy. Therefore, Hamilton Partners as an additional insurer under their policy that was not a true excess policy for the $2 million should be the insurance company to respond when we made a targeted tender. So our first argument doesn't require the court to get into this painstaking comparison of other insurance provisions. And that goes back to what I quoted from John Burns' Illinois Supreme Court decision, 189 Illinois 2nd at 570. You don't have to worry about the other insurance clause because we know their policy is not a true excess policy. Only the umbrella policy is. Once we deselected the charter or policy, there was no other insurance available for the $2 million ANPAC policy to be excess of. The $2 million policy was the sole triggered policy required to respond for both defense and settlement within the $2 million limit. If John Burns is the law, our targeted tender was valid. Now, in Kojima, the Illinois Supreme Court clarified that this paramount right applies only as between policies at the same level. This means that the insurer cannot target tender a true excess policy until all primary coverage has been exhausted. If the parties should be able to agree on anything, they should be able to agree that the $2 million ANPAC policy and the $1 million charter or policy are not true excess policies. What in the policy supports your argument? So the ANPAC policy has no predetermined attachment point or exhaustion requirement. For the umbrella policy, it does have a $2 million attachment point. It doesn't pay until there's $2 million in underlying insurance that triggers that exhaustion. I'm sorry, that triggers that underlying, yeah. And, of course, the $2 million ANPAC policy has a duty to defend any suit, just as would any primary policy. The $2 million ANPAC policy has $1 coverage, unlike a true excess policy. And to repeat, the insurer agreement does have a requirement to defend any suit. Here, the settlement was within the $2 million limit, and ANPAC alone should have defended and identified Hamilton Partners. Now, this court held that the ANPAC policy was excess by reason of the primary and non-contributory endorsement and its other insurance conditions. But those provisions do not make the ANPAC policy a true excess policy. It becomes excess, if at all, only by coincidence. That is, by comparing the terms of the ANPAC policy and the Charter Oak policy. But the whole point of John Burns is to prevent ANPAC from taking advantage of its other insurance provision. John Burns and Kojima obviate the need to reconcile other insurance conditions and policies that are not true excess, but excess at most, as here, by coincidence only, meaning by reading and comparing the terms of the two policies. Now, we submit the court erred for a second reason, even if you do consider the terms of the two policies. The ANPAC policy has two other conditions. The primary and non-contributory endorsement and condition H. By its terms, the primary and non-contributory endorsement does not make ANPAC excess. The first sentence states that the policy is primary, quote, where required by written contract, close quote. There is no dispute that Hamilton Partners was added as an insured without a written contract requiring ANPAC to be primary. So after the first sentence, the endorsement does not apply. The endorsement, this is important, the endorsement does not say that the coverage is excess unless a contract requires that its insurance be primary, as was true in River Village 1 and certain underwriters at Lloyd's. The word unless is simply not in the endorsement. Then we go to the other endorsement that amends the other condition, I'm sorry, the other insurance condition H. That endorsement has two paragraphs. Both refer to, quote, you, YOU, close quote, defined to refer to the named insured condenser people because that is the named insured that appears on the declaration page. This court relied on the second paragraph, which states that if there is other insurance, ANPAC will pay only for the amount of covered loss or damage in excess of the amount due from the other insurance, close quote. Very important. The court stopped quoting in paragraph 65 of its decision after the word insurance. But this paragraph goes on to say, quote, whether YOU can collect on it or not, close quote. Those words that were omitted from the quotation in the policy are critical to a proper interpretation of the words that come before it. This paragraph applies only to condenser people. That's the YOU in the policy. Adults and partners as an additional insured is not, quote, YOU, close quote. It is by definition not a named insured but an additional insured. This paragraph does not apply for a second reason. The words covered loss or damage and whether you can collect on it or not make clear that this paragraph only applies to ANPAC's first party property coverage, not the third party bodily injury liability at issue in the underlying lawsuit. If that was the case, then why wasn't that specifically placed into the policy? That's a great question because here's the thing. By definition, it only refers to, that language only refers to the property damage part of the policy. You want to talk about the business liability part? If you go to the next two numbered paragraphs in Condition H, they specifically refer to business liability. So ANPAC, as the drafter of the policy, knew very well how to refer to business liability when it wanted to. It did not refer to business liability in the second paragraph of the policy that the court relied on. It did in the other paragraphs that are not applicable, but in the paragraph that the court relied on, it does not refer to business liability. It uses language that only is found in the first party property damage part of the policy. Then we go to two provisions in the Charter of Policy that make it access to ANPAC. Under the real estate managed endorsement, the Charter of Policy is access. Also, although that would be enough by itself to make its coverage access, the policy is also made access for liability arising out of operations for which Hamilton Partners was added by endorsement. The terms of the Charter of Policy were satisfied for its coverage to be access based on two different provisions. None of the other insurance conditions applies to make the ANPAC policy access for Hamilton Partners, but the court need not even reach this issue if it holds that the targeted tender was valid under John Burns. So to sum it all up, first you look to see if there's been a valid John Burns tender. We submit there was a valid tender because we do not have a true access policy. We only have two policies that are access by coincidence, only by comparing their terms. John Burns says you don't have to bother with that because another insurance condition by itself will not override a John Burns tender if you're talking about policies that are not true access policies. Doesn't John Burns limit the targeted tender to situations where there are multiple primary policies, right? But it doesn't say that you can override those conditions in order to get the policy to attach. So again, going back to the language of John Burns, the court is saying that the other insurance provision does not in itself overcome the right of an insured tender defense to one of the two carriers. But the only time that the Supreme Court has recognized that John Burns does not apply is when one of those policies is a true access policy. Neither policy here is a true access policy. And we respectfully submit that the Supreme Court said what it meant and meant what it said when it said that you can't rely on an other insurance provision if the policy is not a true access policy. I will acknowledge, though, Justice Reyes, that there are cases after John Burns from the appellate court that have not always been faithful to that language. I acknowledge that. And I think those cases were cited in the original decision and also by opposing counsel. But the point is that at least as John Burns has been applied in Kojima, John Burns is going to apply unless one of those policies is a true access policy. I believe my time may have expired, but I just want to say that I thank the court for its patience and also for giving us the opportunity to address you today for oral argument in a case that I know is important to both parties. So for all the reasons set forth in the briefs, in the petition for rehearing, in the briefing on the petition for rehearing, we ask you to reverse the trial court and to enter judgment in favor of Hamilton Partners and Charter Oak. Thank you. Thank you. Thank you. I have to say this is a ‑‑ I know the students who don't know any of this. I won't say you don't know because you may know more than I do. But I find it fascinating. I hope you are enjoying this. Good morning, Your Honors. Good morning. Appellate court, opposing counsel, our assembled audience. I'd like to zoom out and look at a portion of the Rule 23 order here that I think a lot of people might have skimmed by because it's amongst some of the boilerplate about summary judgment and what it is. But I think it's important in addressing the issues that you've raised with my opposing counsel here today to ascertain the intent of the parties and the meaning of words used in the insurance policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured, and the purpose of the entire contract. Zooming out here, what we have, and I'll correct Mr. Reese's a little bit, ANPAC issued three policies that pertained potentially to Jason Tochnik's suit. There was also a worker's comp policy. And that gets into some of the contribution arguments that weren't really addressed here today. But ANPAC insured, convinced their people, is a company that goes up on roofs and cleans large HVAC equipment. It's dangerous work, which is why they carried a lot of insurance. They had a $2 million primary policy, a $1 million work comp policy, and an umbrella policy over those primary policies. As Mr. Reese has stated, and I agree, based on the ultimate settlement, we can just kind of do away with that umbrella policy. But he is correct, it was there. The ultimate settlement here was $2.35 million. ANPAC paid $1.35 million and chartered over once, and Hamilton Partners want ANPAC to pay the whole thing. They want ANPAC to pay every dollar of it, aside from a $25,000 settlement, to a party that's no longer in here. And let's look at why. What were the insurance contracts that the parties bought? And what was bargained for? Convinced their people had their policy with ANPAC. And as you guys have noted, there was a provision in that policy that says, if your contract requires us to be primary, we're primary. Otherwise, we're excess. And again, I'm paraphrasing. I know. It's all in here. So let's look at what's happening here. What are the risks that ANPAC actually contracted for with their insurance? ANPAC's policy position was not based on a comparison between ANPAC's policy and Charter Oak's policy. And we know that because Charter Oak refused to give ANPAC their policy for three years. ANPAC's position from day one has always been based on ANPAC's review of the policy compared to the facts in the real world. And the facts in the real world are the contract between Charter Oak or, excuse me, the contract that Condenser People was working on was just a one-sheet work order. There was no requirement that they be added as primary non-contributory additional insured. Is that why it wasn't written into the agreement? It was not. And that's another reason. Was that why it wasn't written into the agreement? Because there was already an understanding? So I don't know why it wasn't other than somebody maybe just didn't think to do so. But what the testimony was in the trial report was that it was Hamilton Partners' practice to ask their contractors to add Hamilton Partners as a named additional insured on their policies. And Condenser People did that. ANPAC does not dispute. They called the broker. They asked for that. They are a named additional insured on that ANPAC policy. No dispute. What the dispute is is whether a John Burns targeted tender is allowed to rewrite ANPAC's policy. That's what it really gets down to here. What would it be rewriting? So tell me what you believe the policy is so that we can determine regarding this rewrite. I believe the functional import of Charter Oak's argument is that their targeted tender strips out this particular language from ANPAC's policy. When required by written contract or agreement, this insurance is primary and or non-contributory as respects any other insurance policy issued to the additional insured. And such other insurance policy shall be excess and or non-contributory, whichever applies with this insurance. So without that contract that's mentioned in that provision, then it is your contention that ANPAC's policy was excess and not primary. That is absolutely correct. And how do you respond then to counsel's argument regarding the John Burns case, which counsel argues reads out of the analysis this particular provision and says that this policy should be primary? I appreciate that question. I would say in essence I don't respond to that argument. Kojima responds to that argument. The Kojima case directly addresses this, and there's an excellent explanation of the concepts where they talk about horizontal exhaustion versus vertical exhaustion. What's your understanding of the types of policies that require horizontal exhaustion and the types that don't under Kojima? I think that's a good question, and I think that the answer is we're not looking at broad concepts of types of policy, and I think that's where the appellant's analysis goes awry, of saying whether something is a true excess policy or excess by coincidence. This policy, ANPAC's policy, is excess because of the terms of the policy as applied to the facts. The terms of ANPAC's policy as applied to the facts, notably the lack of a written contract between condenser people and Hamilton Partners requiring it to be. So what types of policies? There will be many types of policies. And the issue is, and that's why I began my argument by saying, we need to be not focused on trying to categorize things in buckets of types of policies and things like that, but look at the terms of the ANPAC policy. That's where counsel is taking us. He sure is. Right. And he's doing a good job attempting it. But unfortunately, Kojima has already ruled this out.  Kojima has clearly said you can't target a policy at a different level. And I'd like to spend a little bit of a moment on that, because I'd like to spend some time talking about what the universe would look like if Mr. Reese's is correct. If condenser people here, they go out, they buy their policy, and again, they do dangerous work. These are not cheap insurance policies. They have $2 million of primary coverage. And they have an additional insured on that policy for the work that they're doing. That additional insured now, under Mr. Reese's analysis, can say, you know what? Good news. We don't need insurance. We can always target that ANPAC policy. It doesn't matter that we didn't have a contract that specifically laid out the fact that we're expecting ANPAC's policy to be primary and noncontributory. It doesn't matter that ANPAC never knew of that risk, never agreed to write that risk under their policy or in any other negotiation. We, this is their position again, we as Hamilton partners just get to say, good news. We get $2 million in free first-dollar coverage that we never paid for. That finding that is urged here would cause havoc in the insurance markets, especially in multiple, in the construction context, in contexts like this where there's multiple commercial policies with additional insured endorsements and things like that. It would cause havoc for the insurance markets because insurance companies would have no idea the scope of risks that they're undertaking. Because they would have no idea what their own policy functionally said. This argument that's being urged about the breadth of a potential John Burns-targeted type tender is nothing less than giving an insured with potential coverage under two different policies the ability to read out inconvenient provisions in the policy that they want. But wouldn't that action for us require more tightly worded, more specifically worded policies and then everybody's protected, so to speak? I don't believe so. My experience has been that the longer policies get, the more likely people are to come up with creative arguments for why different. Thank you, Your Honor. For why different provisions. This is a clear policy. I believe that the language here is clear and we don't need to get lost in the weeds. Mr. Reese says I believe it's getting lost in the weeds with these arguments about, you know, the ANPAC policy says it's primary if there's a contract instead of saying it's excess unless there's a contract. That's not the standard, right? We can read these policies, and again, I want to reiterate, ANPAC had to make its coverage determination without the Charter Oak policy because Charter Oak and Hamilton Partners refused to provide it. By happenstance, we can clearly disprove that their policy, the ANPAC's policy position, was made based on a comparison of policies. If I extrapolate your logic, then, in this industry, in the industry where we have subcontractors, then unless the parties specifically specify any time a general asks the sub to add them as an additional insurer, it would always be excess. If I extrapolate your logic, it sounds to me that that is what you're saying, that any time they say add us as an additional insurer, that addition would result in you having excess of policy and never being the primary. I respectfully disagree. That would only be the correct if the policy had the same language as the ANPAC policy or similar language, and I concede not all policies have this language. Not all policies have language like this Section H, where it says, even if you're an additional insurer on the policy, we're still an excess policy unless your contract requires us to be primary. So I understand your concern, and as you're aware, adding people as an additional insurer on a contractor's policy is common in all manner of industries, construction, even things like this, just cleaning the HVAC systems, right? Before we move away from the Charter Oak policy, what is the effect of any of the real estate property manage endorsement? Again, Your Honor, I believe that that is a red herring because I believe there's nothing in that policy, there's nothing that is or can be contained in the Charter Oak policy that rewrites the ANPAC policy. I don't believe that we need to look into these arguments about what coverage is available under that policy and these arguments about real estate management and things like that. That's between Charter Oak and Hamilton Partners, right? That doesn't affect the ANPAC policy's coverage. Whether or not, whatever that policy says and whether it's available, whether it's not, ANPAC's policy does not drop down, right? Because ANPAC's policy's terms are clear. There was no written contract between Condenser People and Hamilton Partners requiring ANPAC's policy to be primary, and it's not. End of analysis. With that, as Ms. Rees has pointed out, we did not move for reconsideration on the non-cooperation issue. I believe that's been addressed. I'll be candid with Your Honors. Unless you believe that ANPAC is first dollar primary policy here, the non-cooperation defense is pretty weak factually, right? Because of this confluence of events where ANPAC also had the workers' comp policy, had counsel involved in the suit, involved in the mediation. I'm not going to stand here and say that it's the strongest non-cooperation defense. However, if Your Honors are moved by Mr. Reeson's argument, I think there's a real need to address that because otherwise what we have here, and I have to reiterate these facts, we have an insured, an additional insured policy, saying you, ANPAC, owe us $2 million of primary first dollar coverage in defense, and we don't have to cooperate with you at all. We don't have to provide other insurance policies for you to analyze your coverage obligations. We don't have to do anything. That is mayhem. However, no court that's looked at this has said that ANPAC has primary first dollar coverage, so I don't intend to spend a lot of time on that. Okay. Thank you. Okay. Briefly on the cross appeal, all I'll say is they cited the wrong provision in their own policy as far as the duty to cooperate is concerned. The court effectively disposed of it in one paragraph. Secondly, they never showed prejudice. Once we were in litigation, they got a redacted portion of the policy. Then we gave the trial judge an unredacted portion of the policy. If they had, however, provided dollar one coverage, of course we would have cooperated, so the issue is moved anyway. Okay. Let's talk about the main appeal. That's really where the dispute is. And I heard counsel talk quite a bit about the language of the primary and non-contributory endorsement, except that he really didn't quote it correctly. The endorsement simply states that where required by written contract, its insurance will be primary. Right off the bat, that endorsement doesn't apply because, admittedly, there is no written contract that required them to be primary. But the court didn't just rely on that in its original decision. And if you go to what the actual language of that endorsement is, it does not say that they are excess unless there's a written contract that requires them to be primary. I could find no other case, and they have cited no other case, that has the actual language of their endorsement, as opposed to the language that I just said would apply to make their policy excess. If they said their policy was excess unless there was a written contract requiring them to be primary. But that's not what it says. I didn't hear anything today about the other insurance condition H. Not one thing. Not one thing. Their analysis stopped with the endorsement. It's very clear, if you look at the other insurance condition H, the Mandatory Endorsement Paragraph 2 refers to loss or damage. That's a property damage coverage. It talks about whether or not you can collect. That's a property damage term. It is not a third-party liability term. Look, if they wanted their policy to apply as excess, they could easily follow the cases where they would have said in the policy that their insurance is excess unless that would be a condition precedent. They didn't write their policy that way. The court did not interpret it that way. Admittedly, the trial court did. The trial court stopped after the first paragraph of the endorsement and said, well, it's a condition precedent. But that is wrong. It's wrong because the way it was written, it's not a condition precedent. It doesn't use the word unless. It doesn't say the insurance is excess unless a written contract requires it to be primary. They were in control of the policy. They would decide how it should be written. They wrote it in a way where the other insurance condition, condition H, does not apply. So what we have here is we have their policy without a other insurance condition that makes its policy excess. And we have our policy that has two other insurance conditions that make it excess. The real estate endorsement because our liability underlying case is just based upon our role as a real estate manager. And we also have the other provision that makes us excess when there is other insurance for the operations that are being performed for B-2. So for those reasons, if you did focus on the other insurance provisions with excess, they don't have an excess provision, that makes them primary. But before you get there, that's the long way. That's the long way to get to the conclusion. The shorter way is to simply look at the policies. They are not true excess policies. They are excess only by reference to the terms of the policies. John Burns says you don't have to look at the terms of the other insurance clause. Kojima says you look at the terms. Only one of the policies is true excess. This is not Kojima because we don't have a true excess policy. And under John Burns, you can stop with the analysis where the two policies are excess, if at all, by coincidence. We get to decide which carrier will respond. And John Burns recognizes that for insurance, additional insurance like Hamilton Partners, we get to decide to keep our premiums lower than they would be and based on the loss experience. So, again, if we can just conclude, we're not asking the court to expand on John Burns and Kojima. We are asking the court to apply John Burns and Kojima, namely that an other insurance clause in a policy that is not a true excess policy cannot override an otherwise valid John Burns targeted tender. If there are no questions, then for all the reasons, and we certainly have had enough briefing, in briefing on the petition for rehearing, we ask you to reverse and enter judgment in our favor on our appeal and to affirm as to the cross appeal. Thank you again for your time this morning. You're welcome. Thank you. Just very briefly, Your Honors, I want to make clear, we're not abandoning any of our arguments. This case has been looked at. I need to point out, Jason Topnick, the injured party, was injured over a decade ago. This injury happened in 20, I believe it was 2015, the fall of 2015. This has been argued 10 ways to Sunday, and there have been very creative arguments about all aspects of it. We're not abandoning any of that, but I'm trying to help, Your Honors, with the mind that this is on rehearing and this has already been fully briefed and now briefed again twice. There is no new ground to tread here. All of the arguments are in the record as to the interplay between the policies, whether it's necessary to get to that or not. I'm happy to take any questions from Your Honor, but I do not want to belabor these points, other than to just say we're not abandoning any of our arguments. Thank you. Thank you. All right.  And with that, we would stand adjourned.